## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BILAL HUSSAINI, GHOUSUNNISA )
)
HUSSAINI,  AND GABRIELA GOMEZ )        Case No.
)
      Plaintiffs, )
)        Judge:
      v. )        Magistrate Judge:
)
EAST DUNDEE POLICE OFFICERS )
ANDY RITTER, JESSICA K. MARINOS, )
KYLE MAGNUSON, BRYAN )
MACULITIS, MORETTI, CHIEF JOSHUA )        JURY DEMAND
FOURDYCE, VILLAGE OF EAST )
DUNDEE and DOES 1-10 )
)
      Defendants. )
)
)
)

## INTRODUCTION

1.    This civil rights action brought pursuant to 42 U.S.C. § 1983 and related state laws,

seeks redress for an orchestrated scheme led by East Dundee Police Chief Joshua Fourdyce and

Chief Deputy Andy Ritter, along with Sergeant Jessica K. Marinos, Officer Kyle Magnuson, Officer

Moretti, and Officer Bryan Maculitis, to frame employees of Smoke House located at 545 Dundee

Ave, East Dundee, IL 60118—a business that sells lawful hemp—as illegal marijuana dealers.

2.    The Defendants deliberately used testing methods that they knew would produce

false positives and orchestrated the tampering of seized hemp from the business to fabricate

evidence against both the business and its employees. Despite the Plaintiffs' compliance with the

2018 Agriculture Improvement Act ("Farm Bill") and the Illinois Industrial Hemp Act (505 ILCS

1

89/), which explicitly established a 0.3% delta-9 tetrahydrocannabinol (THC) threshold for legal hemp products, Chief Fourdyce, Chief Deputy Ritter, and their subordinate officers knowingly employed testing methods that they understood would create false positives and deliberately suppressed exculpatory evidence demonstrating the products' legality to fabricate probable cause for a search warrant.

3.      Through this calculated misconduct, Defendants conducted an unconstitutional raid on Smoke House, resulting in the unlawful arrest and detention of Plaintiff Bilal Hussaini, the seizure of legal inventory and business assets, significant economic and reputational harm to Plaintiff Ghousunnisa Hussaini as the lawful business owner, and emotional distress to Plaintiff Gabrielle Gomez.

4.      This civil action seeks redress for the violations of the Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments, including compensatory and punitive damages, injunctive relief, and the immediate return of unlawfully seized property.

5.      The Plaintiffs further seek to hold the Village of East Dundee and its Police Department accountable under *Monell v. Department of Social Services of the City of New York* for implementing unconstitutional policies, practices, and customs that facilitated these violations.

## JURISDICTION AND VENUE

6.      The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as this action arises under the US Constitution and laws of the United States.

7.      The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to claims occurred in Kane County, Illinois, which is located within the Northern District of Illinois.

## PARTIES

9.      Plaintiff Bilal Hussaini is a resident of Kane County, Illinois, and a lawful operator of Smoke House.

10.      Plaintiff Ghousunnisa Hussaini, also a resident of Kane County, Illinois, is the lawful owner of Smoke House.

11.      Plaintiff Gabrielle Gomez, a resident of Kane County, Illinois, was employed by Smoke House at the time of the events described in this Complaint.

12.      At all times, the Defendant Joshua Fourdyce acted under the color of state law as the Chief of Police for East Dundee. Defendant Fourdyce is sued in his individual and official capacity.

13.      Defendant Chief Deputy Andy Ritter was, at all times, acting under the color of state law as an East Dundee police Chief Deputy. Defendant Andy Ritter is sued in his individual capacity.

14.      The Defendant Sergeant Jessica K. Marinos, was at all times acting under the color of state law as an East Dundee police sergeant. Defendant Marinos is sued in her individual capacity.

15.      Defendant Officer Kyle Magnuson was, at all times, acting under the color of state law as an East Dundee police officer. Defendant Magnuson is sued in his individual capacity.

16.      Defendant Officer Bryan Maculitis was at all times acting under the color of state law as an East Dundee police officer. Defendant Macultitis is sued in his individual capacity.

17.      Defendant Officer Moretti was, at all times, acting under the color of state law as an East Dundee police officer. Defendant Moretti is sued in his individual capacity.

3

18.     Defendant Village of East Dundee is an Illinois municipal corporation responsible for the policies, practices, and customs of the East Dundee Police Department that allowed the conspiracy, unlawful raid, and subsequent violations of the Plaintiff's constitutional rights to occur.

19.     All individual defendants were, at all relevant times, employed by the East Dundee Police Department at 115 E 3rd Street, East Dundee, IL 60118.

20.     Does 1-10 are currently unknown officers or individuals who participated in the conspiracy, warrantless searches, and misconduct but whose identities remain concealed through Defendants' fraudulent redactions of police reports and other materials.

## FACTUAL ALLEGATIONS

### The Transformation of Hemp's Legal Status

21.     For decades, the simple possession of hemp could land an Illinois resident in jail. Federal law classified hemp alongside heroin and cocaine in the DEA's Schedule of Controlled Substances, making no distinction between hemp and marijuana. This changed dramatically when Congress passed the Agriculture Improvement Act of 2018 (the "2018 Farm Bill"), fundamentally transforming how America and Illinois would treat hemp.

22.     When the 2018 Farm Bill took effect on January 1, 2019, it established a precise scientific standard to distinguish legal hemp from illegal marijuana. Any cannabis plant or product containing no more than 0.3% delta-9 tetrahydrocannabinol (THC) on a dry weight basis has become legal. This included not only the plant itself, but also "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers" '–a comprehensive definition that legitimized the entire industry overnight.

4

23.     Congress left no room for confusion regarding its intention. The Then-Secretary of Agriculture Sonny Perdue issued clear guidance in 2019: any cannabis product meeting the 0.3% THC threshold was legally hemp. The Farm Bill's Conference Report went further, explicitly preventing states from trying to criminalize hemp through more restrictive definitions.

24.     In March 2021, Congressional leaders reinforced this intent. In a joint letter to federal law enforcement, House Agriculture Committee Chairman David Scott and the Appropriations Subcommittee Chairman Sanford Bishop emphasized that Congress never intended to criminalize any stage of legal hemp processing. They specifically noted that the 2018 Farm Bill had broadened hemp's definition to include "derivatives, extracts, and cannabinoids" precisely to protect legal hemp products.

25.     The state adopted a word-for-word federal definition of hemp, including the crucial 0.3% THC threshold. Illinois took additional steps to protect its hemp businesses and consumers.

26.     Illinois embraced this new approach through its Industrial Hemp Act (505 ILCS 89).  The Illinois legislature built additional safeguards into its hemp laws. Section 20 explicitly protected the legality of hemp products, while Section 25 ensured that federal protections would always prevail in cases of conflict with state law.

**Establishment and Operation of Smoke House**

27.     In 2023, Bilal Hussaini established the Smoke House at 545 Dundee Ave in East Dundee, Illinois, a retail business that sells legal hemp products.

28.     Since its opening, Smoke House has maintained Certificates of Analysis (COAs) from federally licensed laboratories for every product, verifying THC concentrations at or below the legal limit of 0.3% delta-9 THC. These certificates were readily accessible at the business.

29.     As the hemp industry grew in Illinois, local officials began expressing concerns about the effects of hemp products, despite their legal status. However, these policy discussions did not alter the fundamental legality of businesses such as Smoke House under federal and state law.

30.     Throughout this period, Smoke House operated in full compliance with all applicable laws and regulations, maintaining proper documentation and verification of the legal THC content of its products.

## IV.    Defendants' Fraudulent Warrant Application

31.     Chief Deputy Andy Ritter and Chief Joshua Fourdyce orchestrated a scheme to frame Plaintiffs Bilal Hussaini, Ghousunnisa Hussaini, and Gabriela Gomez as operators of an illegal marijuana business.

32.     On August 22, 2024, as part of their scheme to frame the Plaintiffs, Chief Deputy Ritter deployed Officer Moretti as an undercover officer to the Smoke House.

33.     Defendant Officer Moretti, dressed in plain clothes, entered the store and purchased products from Smoke House from Plaintiff, which all defendants knew was legal hemp.

34.     Defendants Chief Joshua Fourdyce, Chief Deputy Andy Ritter, Officer Kyle Magnuson, and Officer Bryan Maculitis acted in concert to subject the product which they knew was hemp to the NARK II field test. The NARK II field test could not distinguish between legal hemp and illegal marijuana. The test only detects the presence of cannabinoids, generating a positive result for any cannabis product, and cannot detect THC levels.

35.     Defendants Chief Fourdyce, Chief Deputy Ritter, Officer Magnuson and Officer Maculitis all knowingly relied on this presumptive test, fully aware of its limitations, as part of their calculated scheme to fabricate evidence and frame Plaintiffs for illegally selling marijuana.

36.     Defendants Chief Fourdyce, Chief Deputy Ritter, Officer Magnuson and Officer Maculitis acted in concert to intentionally use the NARK II test results to fabricate false evidence of against Plaintiffs, omitting in their sworn statements that the test cannot differentiate between legal and illegal cannabis products.

37.     Defendants Chief Fourdyce, Chief Deputy Ritter, Officer Magnuson and Officer Maculitis also knowingly incorporated false statements in their application for a search warrant. Defendants knowingly mischaracterized routine retail transactions at Smoke House as suspicious "hand-to-hand drug transactions." These allegations were fabricated to create the appearance of illegal marijuana sales when defendants knew they were observing the sales of legal hemp.

38.     Defendants Chief Fourdyce, Chief Deputy Ritter, Officer Maculitis and Sergeant Marinos acted in concert to deliberately omit material exculpatory evidence from their search warrant application and their application for criminal charges including certificates of analysis proving THC content below legal limits, clear product labeling showing legal compliance, and documentation verifying Smoke House's legitimate business operations.

39.     On August 22, 2024, Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis were granted a search warrant authorizing them to search Plaintiff's business. Without these fabrications and omissions, there would have been no basis for a search warrant.

**V.  Defendants executed the fraudulently obtained warrant**

40.     On August 22, 2024, at approximately 8:28 PM, Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, Officer Bryan Maculitis, and 10 other John Doe Police officers participate in an aggressive raid on Smoke House, as a result of a warrant they obtained through fraudulent means.

41.     Fourteen officers who included Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis swarmed the small retail store under the pretext of enforcing the warrant, creating a chaotic and intimidating atmosphere disproportionate to the circumstances.

42.     Upon entry, the officers which included Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis began seizing products from the store and accusing Bilal Hussaini of selling illegal marijuana.

43.     Upon entry of the police officers, which included Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis, Mr. Hussaini immediately presented COAs from federally licensed laboratories verifying the scrutinized merchandise was legal hemp and not illegal marijuana.

44.      These COAs conclusively proved that the products under police scrutiny contained less than 0.3% THC, classifying them as legal hemp under federal law.

45.     Even if a search warrant was authorized, once the Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis became aware of evidence negating probable cause, they were obligated to cease their search and seizure.

46.     Despite this exculpatory evidence, Chief Deputy Ritter directed Officer Maculitis to photograph and seize the store's inventory, including 778 Delta-8 and Delta-9 THC products,

178 bags of hemp flowers, 93 containers of hemp products, 20 jars of CBD gummies, five containers of hemp seeds, $2,478 in legitimate proceeds, three cell phones, and a laptop.

47.      Around 8:45 PM, Mr. Hussaini was handcuffed and taken into custody despite his cooperation and the presentation of COAs.

48.      He was escorted out of his store, transported to the East Dundee Police Department, and processed in Cell #1.

49.      Around 9:21 PM, Mr. Hussaini was removed from his cell, read his Miranda rights, and interrogated about the non-existent license requirement to sell hemp products.

50.       Officers knew that neither federal nor Illinois law required such a license for a retail store to sell products with less than 0.3% THC.[1]

51.      After questioning, Mr. Hussaini was returned to his cell while officers contacted the Assistant State's Attorney (ASA) Samuel Partida.

52.      ASA Partida approved the charges based on false-positive field tests.

53.      On August 23, 2024, at approximately 12:12 AM, after nearly four hours in custody, Mr. Hussaini was released. Officers informed him the investigation was ongoing and retained his legal inventory and business property "until further notice."

54.      As part of their scheme, Defendants Chief Deputy Andy Ritter, Officer Marinos, Officer Magnuson, and Officer Maculitis conspired to falsely designate Plaintiff Gabriela Gomez, an employee of Smoke House Tobacco, as a suspect in the sale of illegal marijuana solely based on her employment with the business.

55.      Defendants' actions subjected Ms. Gomez to severe emotional distress. She experienced acute fear and anxiety regarding the possibility of criminal prosecution. Being

wrongfully labeled as a suspect in a drug-related investigation not only stigmatized her in her community but also placed her under the constant threat of legal consequences.

56. Ms. Gomez feared the long-term impact of these allegations, including damage to her reputation. These fears were compounded by the aggressive and intimidating nature of the police raid, which made her feel targeted and unsafe.

57. The harm inflicted upon Ms. Gomez extended beyond the immediate threat of prosecution. She now lives in the shadow of potential legal repercussions stemming from Defendants' fabricated charges, and has endured significant emotional distress, including sleepless nights, heightened anxiety, and a sense of betrayal by law enforcement.

58. Defendants' decision to list Ms. Gomez as a suspect was baseless and lacked a factual foundation. It was a reckless and malicious act that furthered their broader scheme of targeting Smoke House and its employees without regard to their innocence or truth.

59. As a direct and proximate result of Defendants' actions, Ms. Gomez has suffered emotional and psychological harm, reputational damage, and persistent fear of unjust prosecution.

## VI. Exceeding the Scope of the Fraudulently Obtained Warrant

60. During the search of Smoke House Tobacco, Mr. Hussaini provided COAs and documentation verifying the legality of every product in his store. Despite this, the officers seized and searched his personal cell phone. At the time of the search, the officers were already in possession of the COAs, demonstrating compliance with federal and state hemp laws.

61. On August 24th, 2024, Chief Fourdyce and Andy Ritter went back to the store and demanded Mr. Hussaini's cell phone.

62.     Mr. Hussaini surrendered the phone under the pressure of the officers' presence. Officers could not access the phone immediately. Later, Sergeant Jessica K. Marinos and Officer Bryan Maculitis approached Mr. Hussaini and requested his password, stating that their request was authorized under the warrant.

63.     At this point in time, Sergeant Marinos and Officer Maculitis were in possession of definitive proof through the COAs that the products in question were legal hemp, yet they continued their unlawful search and seizure of Mr. Hussaini's private property.

64.     Mr. Hussaini provided the password, and the officers accessed the phone.

65.     The phone was passed among the officers, and Chief Deputy Ritter took a photograph and performed a data dump from the device. During this process, officers accessed private and intimate content, including photographs of Mr. Hussaini and his wife.

66.     Mr. Hussaini, a Muslim, expressed distress regarding the officers' access to private photographs of his family, as such violations deeply conflicted with his cultural and religious values.

67.     The invasion of privacy caused significant emotional harm to Mr. Hussaini, who felt humiliated and spiritually violated.

68.     The distress extended to Ms. Gomez, who witnessed the coercion and aggressive actions of law enforcement during the raid.

## VII.    Defendants Intentionally Tamper with Seized Evidence to Inflate THC Levels in Furtherance of Scheme to Frame Bilal Hussaini

69.     Defendant Chief Deputy Andy Ritter himself acknowledged in a report that the merchandise seized from Bilal Hussaini was legal hemp. Specifically, Chief Andy Ritter stated:

"On 08/29/24 at approximately 1400 hours, Chief Joshua Fourdyce and I returned products, cash, and packaging material to Bilal at Smoke House. It was decided not to pursue charges as all signs pointed that his product was hemp"

70. Despite this clear admission and the exculpatory evidence in their possession, Defendants engaged in retaliatory conduct to continue to pursue criminal charges against Bilal Hussaini.

71. On November 22, 2024, Mr. Hussaini was issued a criminal summons.

72. The revived charges were based on the fact that the hemp seized from the Smoke House tested above legal THC levels using a gas chromatography test.

73. This gas chromatography test was used by Defendants Chief Fourdyce and Chief Deputy Ritter despite their awareness that the method artificially inflates THC levels by converting non-psychoactive THCA into psychoactive delta-9 THC during the testing process. Defendants Chief Fourdyce and Chief Deputy Ritter were explicitly informed that this testing method was unreliable for distinguishing between legal hemp and illegal marijuana, as it would artificially inflate THC levels and was not appropriate for determining compliance with federal and state hemp laws. Despite this clear guidance,

74. Defendants Chief Fourdyce and Chief Deputy Ritter willfully chose to use the gas chromatography test to frame Mr. Hussaini.

75. Defendants deliberately relied on this unreliable and misleading test to fabricate evidence and justify the revival of charges against Mr. Hussaini. Despite being informed of its flaws, their decision to proceed with such testing was a deliberate act intended to tamper with evidence and frame Plaintiffs for illegal marijuana.

76.     The seized products were tampered with during the investigation and subjected to methods that permanently altered their original condition. These alterations artificially inflated THC levels, converting non-psychoactive THCA into delta-9 THC.

77.     On November 26, 2024, the *Chicago Tribune* published an article titled *"East Dundee Board Considers Hemp Sales Ban After Police Find Illegal Items in Store,"* in which Chief Fourdyce claimed that Mr. Hussaini was selling illegal items in his store.

78.     Chief Fourdyce informed reporters that Mr. Hussaini was selling products "significantly higher" than the legal THC threshold—a claim Chief Fourdyce knew was false, as the elevated levels existed only because he had orchestrated the tampering of Mr. Hussaini's seized hemp products by artificially elevating their THC content.

79.     Chief Fourdyce's statements were made with the intent to mislead the public into believing that Mr. Hussaini was operating illegally; bolster the fabricated criminal case against Mr. Hussaini by creating a false narrative of illegality.

80.     Chief Fourdyce deliberately fed false and misleading information to the media to frame Bilal Hussaini as an illegal marijuana dealer and further his scheme to portray Smoke House as a business engaged in criminal activity.

81.     The publication of these lies irreparably harmed Mr. Hussaini's business and reputation. He was publicly characterized as an illegal marijuana dealer, a stigma that follows him. Smoke House, once a respected business operating in full compliance with federal and state hemp laws, was stigmatized in Chicago's most widely read newspapers.

82.     Customers lost trust, foot traffic declined, and this was a direct result of Chief Fourdyce's malicious dissemination of false information.

83.     As the lawful owner of Smoke House, Plaintiff Ghousunnisa Hussaini suffered direct and substantial economic damages from the Defendants' actions.

84.     Ms. Hussaini's investment in and operation of a legitimate business has been severely damaged by Defendants' unlawful actions. The reputational damage to her business in the East Dundee community has been severe and lasting, as she has been falsely branded as operating an illegal drug enterprise.

85.     Ms. Hussaini has suffered severe emotional distress as a result of watching her legitimate business be falsely portrayed as a criminal enterprise. She has experienced anxiety, sleepless nights, and profound distress from seeing her reputation in the community destroyed by Defendants' false accusations and malicious conduct.

86.     The ongoing stress of facing potential criminal prosecution, coupled with watching her business suffer from Defendants' unlawful actions, has caused Ms. Hussaini significant psychological and emotional trauma. She lives in constant fear of further police harassment and retaliation.

87.     Ms. Hussaini has suffered ongoing financial losses, emotional distress, and damages to her business reputation as a direct result of Defendants' conduct.


**VIII.     The Village of East Dundee Failed to Properly Train its officers**

88.     Through its police department, the village of East Dundee is responsible for training its officers on the proper methods for distinguishing between legal hemp and illegal marijuana under the Federal Agriculture Improvement Act of 2018 ("Farm Bill") and Illinois law (505 ILCS 89/).

89.    Despite the clear legal standards established under federal and state law, the Village of East Dundee failed to train its officers on the limitations of the NARK II field test, which cannot differentiate between legal hemp and marijuana.

90.    The Village failed to train its officers not to use the NARK II field test as a basis for probable cause or enforcement actions because of its known inability to distinguish between legal and illegal cannabis products.

91.    This failure to provide adequate training demonstrates deliberate indifference to the constitutional rights of individuals, including Plaintiffs, who operate legitimate hemp businesses in compliance with federal and state law.

92.    The Village's failure to train its officers was a direct cause of the unconstitutional raid on Smoke House, including the fabrication of false evidence, the unlawful arrest and detention of Plaintiff Bilal Hussaini, and the seizure of legally compliant products and property.

## Count I – 42 U.S.C. § 1983

**Malicious Prosecution and Unlawful Detention (Fourth and Fourteenth Amendments**) against Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson,  Officer Bryan Maculitis, and and Does 1-10.

93.    Plaintiffs incorporate each paragraph of this complaint as if fully restated here.

94.    In the manner described above, Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis, acting individually, jointly, and in conspiracy, knowingly initiated, influenced, and perpetuated the criminal prosecution and detention of Plaintiff without probable cause.

95. Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis acted in concert to fabricate false evidence using the NARK II field test and GC-MS testing, concealed exculpatory COAs, and falsely accused Plaintiff of selling illegal marijuana, despite knowing he was selling legal hemp.

96. Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis acted maliciously and intentionally to subject Plaintiff to judicial proceedings for which no probable cause existed, depriving him of his liberty and reputation.

97. The misconduct described in this Count was objectively unreasonable and undertaken in total disregard of the truth and Plaintiff's clear innocence.

98. As a direct and proximate result of Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis's misconduct, Plaintiff sustained and continues to sustain injuries, including loss of liberty, financial damages, emotional distress, great mental anguish, humiliation, and other grievous injuries as set forth above.

99. Punitive damages are warranted in this case to punish the Defendants for their intentional, malicious, and unconstitutional actions, and to deter other law enforcement officials from engaging in similar abuses of power.

## Count II – 42 U.S.C. § 1983

### Failure to Intervene

(Against Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis, Moretti, and and Does 1-10)

100. Plaintiffs Bilal Hussaini, Ghousunnisa Hussaini, and Gabriela Gomez incorporate each paragraph of this complaint as fully restated here.

101.    During the constitutional violations described herein, Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis stood by without intervening to prevent the violation of Plaintiff's constitutional rights, despite having both the duty and opportunity to do so.

102.    Each Defendant had the responsibility to intervene to stop the illegal search and seizure of Plaintiffs.

103.    Each Defendant had a responsibility to intervene when they knew that exculpatory evidence had been suppressed, and false evidence (NARK II and GC-MS results) had been fabricated to frame the Plaintiff.

104.    The failure to intervene allowed the continuation of malicious prosecution, false arrest, and unlawful detention, further violating the Plaintiff's constitutional rights.

105.    The misconduct described in this Count was objectively unreasonable, intentional, and in the reckless disregard of the Plaintiff's innocence and his constitutional rights.

106.    As a direct and proximate result of Defendants' Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis's misconduct, Plaintiff sustained and continues to suffer injuries, including financial harm, emotional pain, great mental anguish, humiliation, and ongoing damage to his reputation and livelihood.

### Count III – 42 U.S.C. § 1983

### Fourth Amendment Violation – False Statements in Warrant
(Against Individual Defendants)

107.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

17

108. The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures, requiring warrants to be supported by truthful and accurate statements establishing probable causes.

109. Defendants Chief Joshua Fourdyce, Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis knowingly included false statements and omissions in their application for a search warrant, which were material and necessary to establish probable cause. Specifically, Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis falsely claimed to have observed "hand-to-hand drug transactions" inside Smoke House, when in reality, these were lawful retail sales of hemp products clearly accompanied by COAs proving legal compliance.

110. Using the NARK II field test results to fabricate evidence, knowing the test results could not distinguish between legal hemp and illegal marijuana.

111. Orchestrated the use of gas chromatography testing, a method they knew would artificially inflate THC levels by converting non-psychoactive THCA into psychoactive delta-9 THC to create a false impression of illegality.

112. Suppressed exculpatory evidence, including detailed product documentation and COAs provided by Mr. Hussaini, demonstrates the legality of the seized products.

113. False statements and material omissions were intentionally made to mislead the court into issuing a search warrant, which would not have been granted otherwise.

114. Defendants' actions were not the result of negligence or error; they were part of a deliberate and orchestrated effort to frame Mr. Hussaini as an illegal marijuana dealer and justify an unconstitutional raid on Smoke House.

115.     By presenting false and misleading information in their warrant application and deliberately omitting exculpatory evidence, Defendants violated Plaintiffs Fourth Amendment rights against unreasonable searches and seizures.

116.     As a direct and proximate result of Defendants' misconduct, Plaintiff suffered and continues to suffer significant harm, including the unlawful search and seizure of property, loss of business income and inventory; reputational harm and emotional distress; and financial losses and irreparable damage to his livelihood.

117.     Defendants' actions were undertaken intentionally, with malice, and in reckless disregard for Plaintiff's constitutional rights.

**Count IV – Unlawful Search** ( against all defendants)

118.     Each preceding paragraph is incorporated here by reference.

119.     The Fourth Amendment prohibits unreasonable searches and requires valid probable causes for the execution of any warrant.

120.     Defendants Chief Joshua Fourdyce, Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson,  Officer Bryan Maculitis  and Does 1-10 violated Plaintiff's clearly established Fourth Amendment rights by: Executing a warrant they knew was obtained through false statements; Continuing the search after discovering only legal products;  and conducting a search without probable cause.

121.     As a direct result of this unlawful search, Plaintiffs suffered damages including invasion of privacy, business disruption, and reputational harm.

**Count V -- False Arrest**

19

122.     Each preceding paragraph is incorporated here by reference.

123.     The Fourth Amendment prohibits arrest without valid probable causes based on truthful evidence.

124.     Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis acted in concert to violate Plaintiff's clearly established Fourth Amendment rights by: Arresting him without probable cause; Detaining him based on knowingly false evidence; Maintaining custody after discovering only legal products; and Continuing detention despite ASA Partida's rejection of charges, and continuing to pursue criminal charges against him

125.     As a direct result of this false arrest, Plaintiff suffered damages including loss of liberty, emotional distress, and reputational harm.

## Count VI – Regulatory Taking

126.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

127.     The enforcement actions of Defendants as well as the Village of East Dundee, are without statutory authority or support at the state or federal level. In contrast, the Defendants' actions directly contravene the 2018 Agriculture Improvement Act (Farm Bill) and the Illinois Industrial Hemp Act (505 ILCS 89/).

128.     Defendants' actions constitute regulatory taking, as their conduct effectively imposed a total ban on the sale, possession, and distribution of a class of products—hemp and hemp-derived goods containing less than 0.3% delta-9 THC, which are explicitly legal under both federal and state laws.

129.   The actions of Defendants infringe on Plaintiff Bilal Hussaini's constitutional rights and amount to a regulatory taking actionable under the Fifth Amendment's Takings Clause, as enforced through 42 U.S.C. § 1983.

130.   Under the Supremacy Clause of Article VI of the United States Constitution, federal law is the "supreme Law of the Land," and states or municipalities may not enact or enforce policies that conflict with clearly established federal law. Specifically, the 2018 Farm Bill legalized hemp and hemp-derived products containing no more than 0.3% delta-9 THC and preempted local and state attempts to criminalize such legal commerce.

131.   Courts have consistently held that states or municipalities cannot alter the definition of legal hemp or create enforcement actions that infringe upon the clear intent of Congress. As such, Defendants' actions not only lack authority but also unlawfully preempt federal law, thereby standing as an obstacle to Congress's full purposes and objectives in legalizing hemp.

132.   Bilal Hussaini invested substantial time, effort, and capital to establish the Smoke House, a lawful business operating in full compliance with federal and state hemp laws. Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis's unlawful seizure of Plaintiff's inventory and baseless enforcement actions have deprived him of the use, enjoyment, and economic value of his property, constituting a regulatory taking.

133.   Defendants' actions have destroyed the Plaintiff's investment-backed expectations, effectively eliminating all or substantially reducing the beneficial economic use of his property. This constitutes a deprivation of property without just compensation in violation of the Takings Clause of the Fifth Amendment.

134.     Through its officers and agents, it intentionally targeted and criminalized lawful business activities without statutory authority, effectively depriving the plaintiff of his property and livelihood while imposing unconstitutional restrictions on the hemp industry.

135.     As a direct and proximate result of Defendants Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis's unlawful actions, Plaintiff has suffered grievous injuries, including financial loss, damage to his business and reputation, deprivation of property, and significant emotional and economic harm.

## Count VII – 42 U.S.C. § 1983

**Due Process Violation – Evidence Tampering and Denial of Fair Trial** (Against Individual Defendants Chief Joshua Fourdyce, Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson,  Officer Bryan Maculitis and and Does 1-10)

136.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

137.     Defendants Chief Joshua Fourdyce, Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson , and Officer Bryan Maculitis, acting individually and in concert, violated Plaintiff Bilal Hussaini's constitutional right to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution.

138.     Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis intentionally engaged in evidence tampering to fabricate a false narrative of criminal conduct, which deprived Mr. Hussaini of his right to a fair legal process. Specifically, Defendants: Knowingly submitted Plaintiff's legal hemp products for gas chromatography (GC) testing, a method Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis understood would artificially inflate THC levels by converting non-psychoactive THCA into psychoactive delta-9 THC under intense heat.

Ignored and suppressed exculpatory COAs conclusively proved that the products complied with the federal and state hemp laws.

Relied on unreliable NARK II field tests, which could not distinguish between legal hemp and illegal marijuana, to manufacture probable cause.

The evidentiary integrity of the hemp products was intentionally destroyed, rendering them unusable for the Plaintiff's defense.

139. These actions resulted in the manufacture of false evidence, which Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis used to initiate and advance an unlawful prosecution, violate Plaintiff's liberty, and deprive him of his property and livelihood without due process of law.

140. The deliberate suppression and manipulation of exculpatory evidence, coupled with the presentation of false and tampered evidence, constitutes a fundamental violation of Mr. Hussaini's due process rights and the protections afforded under the Fourteenth Amendment.

141. As a result of the Defendants Chief Fourdyce, Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis's misconduct, Mr. Hussaini was subjected to unlawful arrest and detention based on fabricated and manipulated evidence.

142. Damage to his ability to present a defense, as the tampered products were no longer in their original exculpatory state, which was the state in which the Defendants found the products.

143. Reputational and financial ruins stemming from prosecution lack a legitimate factual basis.

144.    The actions of Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis were not the result of confusion or mistake but were intentional, willful, and done with reckless disregard for Plaintiff Bilal Hussaini's constitutional rights.

## Count VIII – 42 U.S.C. § 1983

### Municipal Liability - Unconstitutional Policy, Practice, and Custom

(Against the Village of East Dundee)

145.    Plaintiffs' Claim against the Village of East Dundee for Policies, Customs, and Practices Causing Violations of Plaintiff's Constitutional Rights Plaintiff incorporates each paragraph of this complaint as if fully restated here.

146.    The Village of East Dundee failed to train its officers on scientifically valid methods for distinguishing between legal hemp and illegal marijuana, including proper laboratory testing procedures that could accurately measure delta-9 THC concentrations at the 0.3% threshold established by federal and state law. Despite the clear statutory distinction between legal hemp and illegal marijuana based on THC concentration, the Village provided no training on the scientific limitations of field tests like NARK II, which cannot measure THC levels, or the need for specialized laboratory testing methods that do not artificially inflate THC content through the conversion of non-psychoactive compounds.

147.    The constitutional violations that caused Plaintiff Bilal Hussaini's unlawful arrest, detention, and false criminal prosecution were the result of the Village of East Dundee's policies, customs, and practices of pursuing charges and seizures without regard for the truth, through

reliance on profoundly flawed investigations involving evidence tampering, fabrication of evidence, and suppression of exculpatory evidence to create the illusion of illegal activity.

148.    At all times relevant to this complaint, the Village of East Dundee failed to promulgate proper and adequate rules, regulations, policies, and procedures governing:

149.    The collection, documentation, preservation, and testing of physical evidence, including the proper use of field tests and laboratory testing methods.

150.    Disclosure of exculpatory evidence, including COAs and product labeling

151.    Proper training and supervision of officers regarding probable cause requirements post-hemp legalization and the writing of truthful police reports, proper warrant applications, and disclosure of investigative materials

152.    Intervention to prevent or redress officer misconduct.

## Count IX – Intentional Infliction of Emotional Distress

(Against Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis)

153.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

154.    The actions, omissions, and conduct of Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis, as set forth above, were extreme and outrageous. These actions represent a flagrant abuse of power and authority and were undertaken with the intent to cause or with reckless disregard of the substantial probability that their conduct would cause severe emotional distress to Plaintiff Bilal Hussaini, as alleged above.

155.    Defendants Chief Deputy Ritter, Sergeant Marinos, Officer Magnuson, and Officer Maculitis acted in an outrageous manner by:

Intentionally fabricating evidence, including the deliberate misuse of the unreliable NARK II test and gas chromatography-mass spectrometry (GC-MS) testing, to frame Plaintiff as a marijuana dealer.

Intentionally ignoring exculpatory evidence, including valid COAs, conclusively demonstrated the Plaintiff's full compliance with federal and state hemp laws.

Initiating a false criminal prosecution against Plaintiff based on knowingly manipulated and tampered evidence; and

Subjecting the Plaintiff to unlawful arrest, detention, and seizure of his lawful business assets without a probable cause.

156.    Defendants engaged in this misconduct in conscious and deliberate disregard for Plaintiff's rights and safety, intending to inflict harm. Their conduct caused cruel and unjust hardship, through intentional misrepresentation, deceit, and concealment of material facts known to them—all done to deprive Plaintiff of his liberty, property, and legal rights.

## Count X – Willful and Wanton Conduct

(Against Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis)

157.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

26

158.     At all times relevant to this complaint, Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis had a duty to refrain from willful and wanton conduct in connection with their investigation and actions against Plaintiff.

159.     Notwithstanding that duty, Defendants acted willfully and wantonly through a course of conduct that demonstrated utter indifference to, or conscious disregard for, Plaintiff's legal rights.

160.     As a direct and proximate result of Defendants' willful and wanton misconduct, Plaintiff suffered injuries, including emotional pain, reputational harm, financial loss, humiliation, and other grievous and continuing damages.

## Count XI – Civil Conspiracy

(Against Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis)

161.     Plaintiffs incorporate each paragraph of this complaint as if fully restated here. Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis, acting in concert with one another, reached an agreement to frame Plaintiff Bilal Hussaini for a crime he did not commit.

162.     In furtherance of their conspiracy, Defendants committed overt acts, including fabricating evidence, suppressing exculpatory material, and initiating a baseless criminal prosecution against Plaintiff.

163.     The misconduct described in this Count was intentional, unreasonable, and undertaken with deliberate disregard for the Plaintiff's innocence and constitutional rights.

164.     As a direct and proximate result of this conspiracy, Plaintiff suffered injuries, including emotional distress, reputational damage, financial harm, and other grievous and continuing damages.

## Count XII - State Law Claim

## Respondent Superior

### (Against Village of East Dundee)

165.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

166.     At all times relevant to this Complaint, Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis were employees, agents, or members of the Village of East Dundee, acting within the scope of their employment.

167.     Defendant Village of East Dundee is liable as principal for all tortuous acts committed by its agents and employees during the course of their employment.

168.     Therefore, Plaintiff respectfully requests judgment against the Defendant Village of East Dundee for compensatory damages, attorneys' fees, costs, and any other relief the Court deems just and proper.

## Count XIII – State Law Claim
## Indemnification

### (Against, Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, Officer Bryan Maculitis, and Village of East Dundee)

169.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

170.   Illinois Law states that public entities must indemnify employees for judgments arising from tortuous conduct committed within the scope of their employment.

171.   At all times relevant to this Complaint, Defendants Chief Deputy Andy Ritter, Sergeant Jessica K. Marinos, Officer Kyle Magnuson, and Officer Bryan Maculitis were acting within the scope of their employment as employees or agents of the Village of East Dundee.

172.   In Illinois, pursuant to 735 ILCS 10/9-102, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

173.   Defendant Village of East Dundee is responsible for paying any judgment entered against the individual Defendants for their misconduct described in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants, jointly and severally, and grant the following relief.

174.   Plaintiffs' compensatory damages to compensate for financial loss, reputational harm, emotional distress, and other damages suffered as a result of the Defendants' actions.

175.   Award Plaintiffs punitive damages to punish Defendants for intentional, malicious, and reckless misconduct and to deter similar conduct in the future.

176.   Award Plaintiffs reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws.

177.   Grant any other relief that the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury.

Dated: December 24, 2024                    Respectfully submitted,


<u>/s/ Hakeem Muhammad</u>
Hakeem Muhammad
Muhammad Law Center
10846 South Halsted
Chicago, IL
Attorneys for Plaintiffs

30